UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LUIS MANUEL CABA FRANCISCO,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN et al.,<br><br>Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)    Civil No. 26-12419-LTS<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM AND ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

July 23, 2026

SOROKIN, J.

Before the Court is the second petition by Luis Manuel Caba Francisco, a citizen of the Dominican Republic and lawful permanent resident ("LPR") of the United States, invoking 28 U.S.C. § 2241 to challenge his detention by immigration authorities.  His first petition was denied after he failed to rebut the respondents' showing that his detention was consistent with applicable federal statutes and the Constitution.  See Elec. Order, Caba Francisco v. Mullin, No. 26-cv-12043-LTS (D. Mass. May 28, 2026), ECF No. 13.[1]  Because Caba Francisco still has not shown he is seeking the type of relief that is within this Court's habeas jurisdiction or otherwise rebutted the respondents' arguments, his second petition is also DENIED.

Caba Francisco has lived in the United States since November 2013, when he received LPR status.  Doc. No. 1 ¶¶ 7, 12; Doc. No. 11-1 at 1.  He and his partner have two young

---

[1] When citing to documents in the first habeas action (No. 26-cv-12043), the Court will refer to "Caba I, ECF No. __."  Citations to "Doc. No. __ at __" reference documents filed in this second action using the document and page numbering appearing in the ECF header for each item.

children, both United States citizens, and he has lived and worked in Massachusetts for more than a decade.  Doc. No. 1 ¶¶ 12–14.  In 2020, Caba Francisco faced a drug-distribution charge in Massachusetts state court.  Doc. No. 11-2 at 1; <u>see</u> Doc. Nos. 11-3, -4.  He admitted to facts sufficient to support a finding of guilt in June 2023, the matter was continued without a finding of guilt ("CWOF") for eighteen months, then the charge was dismissed in December 2024 after Caba Francisco successfully completed his probationary term.  Doc. No. 11-2 at 2, 8.  Before he opted to resolve his state-court charge that way, his attorney advised him that doing so could lead to his removal from the United States.  Doc. No. 1-3 at 10; <u>cf.</u> Doc. No. 11-2 at 7 (referencing "full colloquy, alien warning" in docket entry on day of admission and CWOF).  The attorney "did not specify" that, if Caba Francisco "left the country" after his admission and CWOF, "he could be excluded" and denied entry upon his return.  Doc. No. 1-3 at 10; <u>see</u> Doc. No. 1 ¶ 18.

This spring, Caba Francisco travelled to the Dominican Republic "to tend to [his] dying father."  Doc. No. 1-3 at 8.  Upon his return on April 13, 2026, he was detained by U.S. Customs and Border Protection ("CBP") officers at Logan Airport.  Though an LPR typically is permitted to reenter the country alongside U.S. citizens without undergoing the screening applicable to noncitizens who are "seeking admission" at the border, 8 U.S.C. § 1101(a)(13)(C), CBP determined that Caba Francisco's CWOF excepted him from that general rule and subjected him to inspection like other arriving or returning noncitizens, <u>see id.</u> § 1101(a)(13)(C)(v).  CBP deemed him inadmissible due to the CWOF and detained him pending removal proceedings.

On May 5, 2026, Caba Francisco filed his first habeas petition, in which he claimed his detention was governed by 8 U.S.C. § 1226 and, as such, he was entitled to a bond hearing.  <u>Caba I</u>, ECF No. 1.  The government's response argued otherwise, providing details concerning Caba Francisco's immigration and criminal history citing statutes governing the admission and

reentry of LPRs at the border, and pointing to § 1225 as the basis for their detention authority. Caba I, ECF No. 9.  When the Court invited a reply addressing these seemingly persuasive and well-supported positions, Caba Francisco neglected to file any further memorandum.  Caba I, ECF No. 12.  The Court therefore dismissed his first petition "on the basis of the government's unrebutted arguments."  Caba I, ECF No. 13.

On May 27, 2026, after his reply deadline in the first case and a day before the Court dismissed that petition, Caba Francisco filed a motion in state court challenging the CWOF and seeking a new trial, urging that his admission was not voluntary because his lawyer had rendered ineffective assistance of counsel.  Doc. No. 1-3.  That motion remained pending at the time of the parties' most recent submissions; nothing more has been filed notifying the Court otherwise. See Doc. No. 8 at 2; Doc. No. 11 at 15.

On the heels of that filing, and about an hour after the Court's dismissal order issued in the first case, Caba Francisco filed his second petition, which is the subject of this Memorandum and Order.  Doc. No. 1.  He expressly requested three forms of relief; the Court reproduces them here in full:

(a) a declaration that the 2023 CWOF does not constitute a "conviction" for federal immigration purposes within the meaning of INA § 101(a)(48)(A);

(b) immediate release from custody, or in the alternative, an individualized bond hearing before a neutral decisionmaker; and

(c) a stay of Petitioner's physical removal from the United States pending resolution of this Petition and the related state-court Rule 30(b) motion now pending in the Hingham District Court.

Id. ¶ 3; see also id. at 11 (including second, alternative declaration concerning effect of CWOF).

Aware of the recent proceedings concerning the prior petition and concerned that the claims and relief described in the new petition strayed beyond the bounds of traditional federal habeas jurisdiction, the Court issued a lengthy Electronic Order stating in relevant part:

3

> This is the second habeas petition filed by this petitioner . . . .  The Court denied his first petition on the merits yesterday. . . . The government's opposition [to that petition], and the Court's ruling, relied on immigration statutes specifying that LPRs are "regarded as seeking admission into the United States," and therefore subject to inspection at the border as provided in 8 U.S.C. § 1225, if they have "committed an offense identified in" 8 U.S.C. § 1182(a)(2), unless they have secured certain forms of discretionary waivers that the petitioner here did not (and does not now) claim to have obtained.  8 U.S.C. § 1101(a)(13)(C)(v).  The referenced offenses include "a violation of" any state law "relating to a controlled substance," and the inadmissibility statute reaches beyond convictions for such offenses to include any person "who admits having committed, or who admits committing acts which constitute the essential elements of," any controlled-substance offense. 8 U.S.C. § 1182(a)(2)(A)(i)(II).  Considering the plain language of those statutes, the exhibits the government produced showing the petitioner had admitted in state court to facts supporting a finding that he had violated two state laws concerning controlled substances, and the absence of any evidence or argument to the contrary by the petitioner, the Court concluded the petitioner's detention upon his return from abroad . . . was authorized by § 1225, and so it denied his petition.

> Now, the petitioner returns with a new petition.  His submission does not explain his failure to respond to the government's legal arguments and factual showing in opposition to his first petition, nor does it offer a belated response to those legal arguments.  Instead, it asserts that his prior state-court proceedings did not yield a "conviction" and therefore cannot provide a basis for his current and continued detention, nor justify a potential future finding by an immigration judge that he is subject to removal. . . .

> Where challenges to immigration detention and the removal process are concerned, this Court's jurisdiction is limited by both the traditional scope of habeas review and the Immigration and Nationality Act.  The latter forecloses this Court's review of most aspects of the removal process described in § 1225 and nearly all discretionary decisions in the immigration context, and provides for direct appeal following an order of removal to the Court of Appeals rather than to this Court. The Court has serious doubts whether it is empowered to entertain [this] action.

Doc. No. 4 (citation modified).  The Court ended by requiring Caba Francisco to show cause why it has jurisdiction here.  Id.

Though he made a timely responsive submission, Caba Francisco failed to address the jurisdictional and other legal issues raised previously by the respondents and described in the Court's Order.  See generally Doc. No. 6 (apologizing, suggesting "excusable neglect" meant "the interests of justice" favor adjudicating claims, and suggesting "substantial constitutional

4

claims concerning the validity of the underlying plea proceedings . . . would directly affect the legal basis for Petitioner's continued detention and removal").  The Court highlighted the deficiencies in that submission in another Electronic Order, noted it would not reopen the prior action, and sua sponte extended the show-cause deadline to permit Caba Francisco "one more chance to address" the jurisdictional and statutory arguments raised by the government and described in the Court's prior Orders.  Doc. No. 7.

Caba Francisco timely responded with a submission that engaged with the relevant questions and appeared to narrow the scope of the relief sought.  See Doc. No. 8 at 1, 9 (characterizing relief as "release or, in the alternative, an individualized bond hearing, together with maintenance of the Court's existing order preserving the status quo").  He also updated the Court about a recent procedural development: On June 15, 2026, following a hearing, an immigration judge ("IJ") "sustained the charge of removability over Petitioner's objection and issued [a]n Order of Removal."  Id. at 2.  The IJ's order is not final; it is subject to review by the Board of Immigration Appeals, and Caba Francisco reserved his right to appeal.  Id.; see Doc. No. 11 at 4 (noting no appeal had yet been filed as of July 6).

In light of the more focused arguments in Caba Francisco's show-cause submission and the intervening events—specifically, the removal order and the state-court motion—the Court directed the respondents to file a memorandum addressing those issues.  Doc. No. 9.  The respondents did so, arguing with supporting exhibits that Caba Francisco's detention is authorized by statute and consistent with the Constitution.  Doc. Nos. 11, 11-1 to -6.  The Court has reviewed all submissions from both parties and disposes of the petition on the papers.

First, to the extent Caba Francisco continues to seek a declaration from this Court concerning the validity or effect (for immigration purposes) of his CWOF, such a request is well

beyond this Court's habeas jurisdiction.  See Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 118–19 (2020) (limiting "scope of the writ" that which "was understood when the Constitution was adopted" and rejecting its use by those seeking orders permitting them "to remain lawfully in the United States" or requiring an "opportunity to" seek "relief from removal"); Munaf v. Geren, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention.").  If Caba Francisco's show-cause submission does not relinquish such requests, they are DENIED.

Second, the same problem dooms a request Caba Francisco continues to press, urging the Court to leave in place its interim stay-of-removal order "through the pendency of [his] appeal to the Board of Immigration Appeals and until the Hingham District Court rules on Petitioner's pending Rule 30(b) motion."  Doc. No. 8 at 9.  The Supreme Court has made clear that federal habeas courts may not issue such orders.  See Thuraissigiam, 591 U.S. at 118–19.  Caba Francisco rightly observes that the Court "has inherent authority" to issue orders aimed at preserving the status quo and preventing "conduct that would moot" its ability to resolve pending claims or otherwise interfere with its jurisdiction.  Doc. No. 8 at 4–5.  The Court exercised that authority here, issuing an interim order limiting the respondents' actions while the Court evaluated its jurisdiction over the petition.  But given the Court's conclusions stated herein, finding Caba Francisco has not plausibly advanced any core habeas claims that warrant further proceedings, the Court's inherent authority cannot justify continuing its interim orders.  So, the petition is DENIED insofar as it seeks from this Court an indefinite stay of removal until multiple proceedings in other forums are resolved.  This ruling does not prevent Caba Francisco from seeking a stay, as appropriate, from the Board of Immigration Appeals and/or the First Circuit.

Third, to the extent Caba Francisco challenges CBP's determination of inadmissibility and invocation of § 1225 upon his return to the United States, the INA precludes this Court from hearing such claims.[2]  8 U.S.C. § 1252(a)(2), (e)(1).  The INA also prevents this Court from entertaining any "questions of law and fact, including interpretation and application of any constitutional and statutory provisions, arising from" Caba Francisco's removal proceedings or the removal order recently issued by an IJ.  § 1252(a)(5), (b)(9).  Such arguments are properly advanced through the administrative appeal process and, ultimately, to the First Circuit.  Id.  It appears Caba Francisco is no longer pressing such challenges here, Doc. No. 8 at 4, but insofar as the petition advances them, they are DENIED.

Finally, though the Court would have jurisdiction over a viable challenge to Caba Francisco's detention—indeed, it has routinely exercised such jurisdiction over petitions brought by noncitizens pursuant to § 2241 challenging their detention by immigration authorities—he has failed to state such a claim for reasons the respondents have explained.  See Doc. No. 11; see also Caba I, ECF No. 9.  It is undisputed that, when he arrived at Logan Airport in April, Caba Francisco's criminal history included a case in which he had admitted to facts sufficient to support a conviction for a controlled-substance offense under Massachusetts law.  Based on the record of that admission and the plain language of applicable federal statutes, CBP considered him a noncitizen "seeking admission," inspected him, deemed him inadmissible, and instituted removal proceedings.  Detention in the wake of those determinations was mandatory.  8 U.S.C. § 1225(b)(2)(A).  Caba Francisco's pending state-court motion, even if it yields a decision

---

[2] A recent decision of the Supreme Court at least implicitly endorses CBP's authority to make such determinations when LPRs who have been charged with or convicted of certain crimes seek to enter the country after returning from abroad.  See Blanche v. Lau, 609 U.S. ----, 146 S. Ct. 1981, 1986–88 (2026).

vacating the CWOF and nullifying his admission, cannot change the facts that were available to the immigration officers who inspected him in April.  And the Court finds that Caba Francisco has not shown his detention, spanning three months thus far, has yet become so prolonged that the Constitution's due process guarantee requires a bond hearing.  Cf. Hernandez-Lara v. Lyons, 10 F.4th 19, (1st Cir. 2021) (recognizing due process interests of "individuals facing indefinite and prolonged detention" and citing decisions of Second and Third Circuits addressing when such individuals are entitled to bond hearings).

For the foregoing reasons, Caba Francisco's second petition is DENIED, and the interim orders by this Court governing the respondents' conduct during the pendency of this action (Doc. Nos. 4, 7) are LIFTED.  Nothing in this order prevents Caba Francisco from filing a habeas petition in the future, should his detention become prolonged or circumstances otherwise evolve such that a renewed challenge to his detention is warranted.

SO ORDERED.

 /s/ Leo T. Sorokin
United States District Judge